1
2
3
4
5
6
7

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| KENNARD L. DAVIS,<br><br>Petitioner,<br><br>v.<br><br>A.J. MALFI, Warden,<br><br>Respondent. | Case No. CV 06-4744-JVS (JEM)<br><br>AMENDED ORDER ACCEPTING FINDINGS AND RECOMMENDATIONS OF UNITED STATES MAGISTRATE JUDGE |

In light of the Ninth Circuit's decision in <u>Curiel v. Miller</u>, ___ F.3d ___, Slip Opinion, Case No. 11-56949 (9th Cir. Mar. 19, 2015), the Court enters this Amended Order Accepting Findings and Recommendations of United States Magistrate Judge.

* * * * * * * * * * * * * * *

Pursuant to 28 U.S.C. § 636, the Court has reviewed the pleadings, the records on file, and the Report and Recommendation of the United States Magistrate Judge ("R&R").[1] Petitioner has filed Objections to the R&R.  Respondent did not file a Response to the Objections.

In the Objections, Petitioner argues that the First Amended Petition ("FAP") is timely because the June 20, 2004, California Supreme Court ("CSC") petition (case no. S125848) tolled

---

[1] This Amended Order replaces the previous Order Accepting Findings and Recommendations of United States Magistrate Judge, filed on March 16, 2015.

1   the limitations period.[2]  There is no merit to Petitioner's contentions.  The CSC denied the June

2   20, 2004, petition as follows:  "Petition for writ of habeas corpus is DENIED.  (See *In re Clark*

3   (1993) 5 Cal.4th 750; *In re Swain* (1949) 34 Cal.2d 300, 304; *People v. Duvall* (1995) 9 Cal.4th

4   464, 474.)"  (Respondent's Lodged Documents ("LD") 18; see R&R at 7-8.)  Petitioner does not

5   challenge the Magistrate Judge's conclusion that a citation to Clark signifies that a habeas

6   petition was not properly filed and did not toll the federal statute of limitations.  (R&R at 12-14;

7   Objections at 8 (conceding that the CSC petition would not toll the statute of limitations "if *Clark*

8   were all the California Supreme Court cited to")); see Lakey v. Hickman, 633 F.3d 782, 785-86

9   (9th Cir. 2011) ("In denying Lakey's final petition for post-conviction relief, the Supreme Court of

10  California cited its decision of In re Clark, 5 Cal.4th 750, 21 Cal.Rptr.2d 509, 855 P.2d 729 (1993),

11  which dealt specifically with the bar of untimeliness.  Because Lakey's untimely petition must be

12  treated as improperly filed, or as though it never existed, for purposes of section 2244(d), the

13  pendency of that petition did not toll the limitations period.") (internal quotation marks and citation

14  omitted).  Instead, Petitioner argues the references to Swain[3] and Duvall[4] make it unclear which

15  claims the CSC rejected as untimely or successive under Clark.  (Objections at 8.)  Petitioner

16  states that, "[i]n light of such ambiguity, there is no procedural default if any of the cited cases are

17  not adequate and independent."  (Id. (citing Washington v. Cambra, 208 F.3d 832, 833-34 (9th

18  Cir.), cert. denied, 531 U.S. 919 (2000) (holding that an order that failed to specify which of two

19  state procedural rules applied to petitioner's claims could not procedurally bar a federal habeas

20  petition if either of the rules was either not adequate or not independent)).)  Yet, the issue here

21  is timeliness of the federal petition, not procedural default.  For federal statutory tolling purposes,

22

23      [2] As the Magistrate Judge found, the petition and FAP were constructively filed on the same

24  day; thus, for purposes of the timeliness inquiry at issue here, the Court will refer to the FAP as the
    initial petition in this matter.  (See R&R at 1 n. 1; Docket Nos. 1, 5, 11.)

25      [3] In Swain, the CSC held that the "vague, conclusionary allegations of the present petition

26  are insufficient to warrant issuance of the writ."  Swain, 34 Cal.2d at 304.

27      [4] In Duvall, the CSC noted that "[c]onclusory allegations made without any explanation of the
    basis for the allegations do not warrant relief, let alone an evidentiary hearing[,]" and that "the

28  burden is on the petitioner to establish grounds for his release."  Duvall, 9 Cal.4th at 474 (internal
    quotation marks and citation omitted).

"[w]hen a postconviction petition is untimely under state law, that is the end of the matter for purposes of § 2244(d)(2)[,]" Pace v. DiGuglielmo, 544 U.S. 408, 413-14 (2005) (holding that if a state court clearly rules that a petition is untimely then that is the end of the matter, regardless if that ruling also addressed the merits) (internal quotation marks and brackets omitted), and a state court's alternative rulings do not make a petition timely, and thus "properly filed," under state law. Bonner v. Carey, 425 F.3d 1145, 1148-49, and n. 19 (9th Cir. 2005), amended by, 439 F.3d 993 (9th Cir.), cert. denied, 549 U.S. 856 (2006) (citing Carey v. Saffold, 536 U.S. 214, 225-26 (2002)). As the Magistrate Judge noted, Petitioner's reliance on cases and analysis from the procedural default context is misplaced given the timeliness issues raised in this case. (See R&R at 13-14 n. 12.)

Moreover, there is no merit to Petitioner's contentions that the CSC's citations to Duvall and Swain signal a pleading that could be corrected and that necessarily is timely, therefore. (Objections at 10-11 (arguing that "if every claim were untimely, the pleading could not be corrected").) Indeed, the Ninth Circuit has just held that the CSC's citations to Swain, 34 Cal.2d at 304 and Duvall, 9 Cal.4th at 474, in a two-line denial of the state petition, were insufficient to rebut the presumption that the state high court "did not silently disregard" the lower court's determination in that case that the petition was untimely. See Curiel v. Miller, Ninth Circuit Case No. 11-56949, filed on March 19, 2015, at pp. 6-9 (quoting Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991) (holding that when "the last reasoned opinion on the claim explicitly imposes a procedural default, we will presume that a later decision rejecting the claim did not silently disregard that bar and consider the merits")). The Ninth Circuit reasoned that, "[t]aken together, the citations to *Swain* and *Duvall* appear to involve only broad discussions of the pleading required in habeas petitions. To conclude from such citations that the California Supreme Court affirmatively disagreed with the [lower court's finding of untimeliness] would be unwarranted." Id. at p. 7 n. 2. The Ninth Circuit concluded that the CSC found the state petitions untimely, despite citing to Swain and Duvall, and that petitioner was not entitled to statutory tolling of the limitations period. Id. at p. 9. The Ninth Circuit's decision in Curiel further supports the Magistrate Judge's

1   conclusion  in this case that, notwithstanding the alternative citations to Swain and Duvall, the

2   CSC's reference to Clark signifies a finding of untimeliness .

3        Based on the foregoing, the Magistrate Judge properly concluded that the June 20, 2004,

4   habeas petition to the CSC did not statutorily toll the limitations period.[5]  See, e.g., Delander v.

5   Hubbard, 2008 WL 2622856, at *2 (S.D. Cal. 2008) (no statutory tolling under Pace for habeas

6   petition denied as untimely by state court with citations to inter alia Clark, Swain, 34 Cal.2d at

7   304, and Duvall, 9 Cal.4th at 474); Delk v. Prosper, 2007 WL 4180210, at *3 n. 1 (E.D. Cal. 2007)

8   (no statutory tolling under Pace for habeas petition denied as untimely by state court with citations

9   to inter alia Swain and Clark).

10        Moreover, even assuming for purposes of this Order that the June 20, 2004, habeas

11   petition to the CSC tolled the limitations period, statutory tolling would not render the FAP timely,

12   contrary to what Petitioner claims.  (See Objections at 15.)  As Petitioner notes, tolling on the

13   basis of the June 20, 2004, petition would begin on July 14, 2004, i.e., the date the statute of

14   limitations started to run, (see R&R at 11); Waldrip v. Hall, 548 F.3d 729, 735 (9th Cir. 2008), and

15   would end on June 8, 2005, the date the CSC denied the petition (see R&R at 12), which is **330**

16   **days**.[6]  Petitioner argues he is entitled to statutory tolling for portions of two other rounds of state

17   collateral review.[7]  First, Petitioner claims the limitations period was tolled from the constructive

18

19        [5]  Moreover, Petitioner's reliance on Cross v. Sisto, 676 F.3d 1172, 1174, 1176-78 (9th Cir.
20   2012) (CSC's denial of habeas petition with citation to Swain and Duvall does not mean that petition
     before the CSC was untimely) is unavailing.  (Objections at 11-12.)  Unlike in Cross, the CSC's
21   denial of the June 20, 2004, habeas petition did not rely on Swain and Duvall, but it also cited
     Clark.  (LD 18; see R&R at 7-8.)  Likewise, Crawford v. Biter, 2012 WL 1229753, at *5 (C.D. Cal.
22   2012) does not help Petitioner.  (See Objections at 11.)  In holding that "the California Supreme
     Court's citation to page 474 of Duvall and page 304 of In re Swain indicates Petitioner's failure to
23   allege facts with particularity, not that the petition was untimely[,]" the court in Crawford specifically
     found that, although the state court denied petitioner's habeas petition with citations to Swain,
24   Duvall, and Clark, "Respondent does not rely on the California Supreme Court's citation to In re
     Clark."  Crawford, 2012 WL 1229753, at *5 and n. 11.

25        [6]  As the Magistrate Judge correctly noted, the habeas petitions that were denied before
26   Petitioner's judgment of conviction became final on July 13, 2004, do not toll the limitations period
     because there was no statute of limitations to toll. (See R&R at 12 n. 11); Waldrip, 548 F.3d at 735.

27        [7]  Although Petitioner conducted yet another round of state collateral review during the
28   limitations period (R&R at 14), this round overlaps with the pendency of the June 20, 2004, CSC
     petition and Petitioner does not seek further tolling of the limitations period on the basis of this

filing of the Superior Court petition on June 5, 2005, until the denial of the California Court of Appeal petition on July 14, 2005 (see R&R at 15), and because doing so would not render the FAP timely, the Court assumes for purposes of this Order that Petitioner is correct.[8]  (See id.) Discounting the overlapping period, this represents an additional **36 days** of tolling.[9]  Second, Petitioner also argues that he is entitled to statutory tolling from the constructive filing of the Superior Court petition on February 6, 2006, until the denial of the California Court of Appeal petition on March 21, 2006.  (See id. at 8-9.)  Here, too, because doing so would not render the FAP timely, the Court assumes for purposes of this Order that Petitioner would be entitled to tolling from March 13, 2006, when Petitioner filed his petition in the California Court of Appeal, to March 21, 2006, when the appellate court denied the petition (see id.), which is **9 days**. However, the Court disagrees with Petitioner that he would be entitled to tolling during the pendency of the February 6, 2006, Superior Court petition.  The Superior Court denied the February 6, 2006, petition for the following reasons:  (1) "Being based on the same facts and law as the prior application which was denied, the issues need not be reconsidered.  (*In re Bevill* (1968) 68 Cal.2d 854, 863 fn.9.)"; and (2) "Petitioner has abused the Writ by filing piecemeal and repetitious claims.  (*In re Clark* (1993) 5 Cal.4th 750, 767-769.)"  (LD 8.)  Accordingly, the Superior Court rejected the February 6, 2006, petition as an improper attempt to present claims in a piecemeal fashion via successive petitions.  "For tolling to be applied based on a second round, the petition cannot be untimely or an improper successive petition."  Porter v. Ollison, 620

round.  (See Objections at 15.)

[8]  Although Petitioner constructively filed a petition for writ of habeas corpus in the CSC on August 29, 2005 (R&R at 15), Petitioner does not argue he is entitled to statutory tolling during the pendency of this petition, including during the gap between the California Court of Appeal's denial of the petition on July 14, 2005, and the filing of the CSC petition on August 29, 2005.  (Objections at 15.)  Indeed, as the Magistrate Judge correctly found, the August 29, 2005, CSC petition has no tolling effect because it was denied with a citation to Clark (LD 19), which signifies that the petition was not properly filed and therefore did not toll the federal statute of limitations. (See R&R at 15); Lakey, 633 F.3d at 785-86; see also Pace, 544 U.S. at 413-14, 417.

[9]  Petitioner incorrectly states that this represents an additional 37 days of tolling. (Objections at 15.)  The limitations period was already tolled during the pendency of the June 20, 2004, petition on June 5, 6, 7, and 8, 2005, which is four days.  Thus, the limitations period was further tolled from June 9, 2005, to July 14, 2005, which is 36 days.

F.3d 952, 958 (9th Cir. 2010).  Thus, this petition was not "properly filed" under state law, and Petitioner is not entitled to statutory tolling for his successive February 6, 2006, petition, or during the gap between the denial of this petition and the filing of the March 13, 2006, petition in the California Court of Appeal.[10]  Porter, 620 F.3d at 958; see also, e.g., Pena v. Lewis, 2013 WL 2177877, at *3 (C.D. Cal. 2013); Ford v. McDonald, 2011 WL 4500008, at *5 (C.D. Cal. 2011).

As the Magistrate Judge found (R&R at 11), and as Petitioner concedes (Objections at 15), without tolling, the one-year limitations period expired on July 13, 2005.  Thus, with an additional 375 days of tolling, Petitioner's federal habeas petition would be due by July 24, 2006.[11]  The FAP was not constructively filed until July 25, 2006 (R&R at 1 and n. 1); therefore, even assuming for purposes of this Order that the June 20, 2004, CSC petition tolled the limitations period, the FAP remains untimely despite statutory tolling.[12]

Petitioner also challenges the Magistrate Judge's finding that the medical records do not support Petitioner's request for equitable tolling based on mental incompetence.  (Objections at 16-31.)  Petitioner's contentions are without merit.  The Magistrate Judge conducted a detailed review of Petitioner's medical records during the limitations period and through the filing of the FAP, and properly concluded that these records do not demonstrate a mental incapacity so

---

[10]  Although Petitioner constructively filed a petition for writ of habeas corpus in the CSC on December 26, 2006 (R&R at 9), Petitioner does not argue he is entitled to statutory tolling during the pendency of this petition, including during the gap between the denial of the March 13, 2006, petition in the California Court of Appeal and the filing of the December 26, 2006, CSC petition.  (Objections at 15.)  Indeed, the December 26, 2006, CSC petition has no tolling effect because it was denied with a citation to inter alia Clark (R&R at 9), which signifies that the petition was not properly filed and therefore did not toll the federal statute of limitations.  See supra at 1-4; Lakey, 633 F.3d at 785-86; see also Pace, 544 U.S. at 413-14, 417.  Moreover, Petitioner filed the December 26, 2006, CSC petition more than nine months after the appellate court denied his habeas petition on March 21, 2006.  This delay is "far longer than the Supreme Court's thirty-to-sixty-day benchmark for California's 'reasonable time' requirement" for filing a petition in a higher court.  Velasquez v. Kirkland, 639 F.3d 964, 968 (9th Cir. 2011) (without adequate explanation for filing delay, petition untimely under California law); see also Carey, 536 U.S. at 225; Evans v. Chavis, 546 U.S. 189, 191 (2006).

[11]  July 23, 2006, the 375th day, was a Sunday.

[12]  Petitioner's habeas petition filed in the CSC on April 12, 2012 (case no. S201525) (R&R at 9) had not tolling effect because it was filed after the statute of limitations had expired.  See Ferguson v. Palmateer, 321 F.3d 820, 823 (9th Cir. 2003), cert. denied, 540 U.S. 924 (2003).

severe that Petitioner was unable to pursue his legal remedies for most of the relevant period. (R&R at 18-36); see Bills v. Clark, 628 F.3d 1092, 1099-1101 (9th Cir. 2010).  As the Magistrate Judge noted, Petitioner was routinely treated on an outpatient basis at the lowest level of mental health services provided by the California Department of Corrections and Rehabilitation, and he suffered only one brief episode requiring crisis mental health care from April 19 to 24, 2006, (R&R at 21 n. 17, 31); with a few exceptions, Petitioner cooperated with his psychiatric care and he was generally able to communicate effectively with medical professionals throughout this period, (id. at 19-32, 34); and Petitioner's Global Assessment of Functioning ("GAF")[13] consistently ranged from 60 to 70, with two exceptions when Petitioner's GAF scores were 53 and 55, (id. at 31). While Petitioner may have suffered from a mental illness during the period in question, the record reveals only occasional symptoms of auditory hallucination (once in each October 2004, January 2005, and April 2005, and twice in May 2005), "racing thoughts" (once in each September 2005 and December 2005), decreased concentration (once in February 2006 and twice in April 2005), and/or feelings of sedation (once in each October 2005 and November 2005).  (Id. at 19-30.) Moreover, during the relevant period, the medical evidence shows no indication of formal thought disorder or disturbances of thought, perception, cognition, or speech, Petitioner's insight and judgment were fair or within normal limits, Petitioner exhibited "linear" thinking, "coherent" speech, and the ability to focus, be logical, problem solve, and compromise his position, he was "alert",

---

[13]   During the period covered by Petitioner's medical records, the GAF scale was used by clinicians to assess an individual's overall level of functioning, including the "psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." Am. Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders with Text Revisions*, 34 (4th ed. 2000) ("DSM-IV"). A GAF of 61-70 indicates some mild symptoms (e.g., depressed mood and mild insomnia) or some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household), but generally functioning pretty well, has some meaningful interpersonal relationships. Id.  A GAF of 51-60 indicates moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers.)  Id.  A 41-50 rating indicates serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting), or serious impairment in social, work, or school functioning (e.g., no friends, unable to keep a job).  A GAF of 31-40 indicates some impairment in reality testing or communication (e.g., speech is at times illogical, obscure, or irrelevant) or major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood (e.g., depressed man avoids friends, neglects family, and is unable to work; child frequently beats up younger children, is defiant at home, and is failing at school.)  Id.

"oriented" and "relates well", his affect/mood, behavior, cognition, and program participation were all within normal limits, and there was otherwise no reported auditory hallucinations or delusions and no paranoia. (Id. at 34-35.)

Petitioner states that the Magistrate Judge places too much weight on unreliable GAF scores. (Objections at 16-21.) To support this claim, Petitioner focuses on six entries in the medical records containing the same GAF score of 65 despite evidence of fluctuations in Petitioner's symptoms and behaviors. (Id.) While the six entries document some changes in Petitioner's condition, the Court disagrees that these entries describe "contradictory and inconsistent" symptoms (id. at 21), thus rendering the GAF scores unreliable. (Id. at 18-21.) Moreover, to the extent the GAF scores do not reflect all the changes in Petitioner's condition, the Magistrate Judge considered the entirety of Petitioner's medical records, including the clinicians' observations accompanying the GAF scores. There is no merit to Petitioner's contention that the Magistrate Judge placed undue weight on unreliable GAF scores.[14]

Relying on mental health records dated after the limitations period expired that show Petitioner lacked general insight into his mental illness, Petitioner also questions how the Magistrate Judge determined that Petitioner "was legitimately alright and not just falsely reporting that he was okay." (Objections at 24-25.) However, the Court limits its review of Petitioner's mental health records to the relevant period for equitable tolling, i.e., the period preceding the filing of the FAP. (See R&R at 19, n. 15); Indiana v. Edwards, 554 U.S. 164, 175 (2008) ("Mental illness itself is not a unitary concept. It varies in degree. It can vary over time. It interferes with

---

[14] Petitioner also states that "GAF scores are subjective and have been removed from the DSM-5 as a measurement of functioning." (Objections at 17.) Here, however, multiple practitioners consistently assessed Petitioner's GAF scores in the 60 to 70 range during a period of more than two years. (R&R at 19-30.) Moreover, while the most recent edition of the DSM dropped the GAF scale, citing its "conceptual lack of clarity" and "questionable psychometrics in routine practice[,]" Am. Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders, 16 (5th ed. 2013) ("DSM-V"), the Ninth Circuit continues to consider GAF scores that, like here, were issued in accordance with the then-applicable DSM-IV, as "a rough estimate of an individual's psychological, social, and occupational functioning used to reflect the individual's need for treatment." Garrison v. Colvin, 759 F.3d 995, 1003 n. 4 (9th Cir. 2014) (finding in the context of a social security disability appeal decided after the DSM-V was issued that GAF scores assessed pursuant to then-applicable DSM-IV are relevant to the disability assessment).

an individual's functioning at different times in different ways."). As the Magistrate Judge explained in the R&R, during the limitations period and through the filing of the FAP, the medical records show that Petitioner generally demonstrated insight into his mental illness and his need for treatment. (R&R at 34-35.)

Petitioner also argues that the Magistrate Judge failed to consider the side-effects of his medications. (Objections at 26-29.) As previously mentioned, however, the Magistrate Judge considered the entirety of Petitioner's medical records, including clinicians' observations regarding Petitioner's impairments and symptoms and any documented medication side-effects. To the extent Petitioner claims that he "likely experienc[ed]" side-effects that are not reflected in his medical records (Objections at 28), his claim is speculative and insufficient to warrant relief.

Petitioner's remaining contentions in the Objections largely repeat the claims and arguments set forth in his motion papers. The Court rejects these contentions for the reasons set forth in the R&R.

The Court has considered Petitioner's Objections and has engaged in a de novo review of those portions of the R&R to which Petitioner has objected. The Court accepts the findings and recommendations of the Magistrate Judge. In particular, the Court concurs with the Magistrate Judge's conclusion that Petitioner has not demonstrated that statutory tolling renders the FAP timely, even if the Court assumes for purposes of this Order that the June 20, 2004, CSC petition tolled the limitations period. As set forth in the R&R, moreover, Petitioner has not shown that the FAP is timely due to equitable tolling based on mental incompetence or for any other reason. The Second Amended Petition, which was filed after the FAP, is also untimely, therefore.

**IT IS HEREBY ORDERED** that Respondent's Motion to Dismiss the Second Amended Petition as untimely be granted and that Judgment be entered dismissing this action with prejudice.

DATED: March 20, 2015

_____
JAMES V. SELNA
UNITED STATES DISTRICT JUDGE